**SIMMONS, INC., Plaintiff–Appellant,**

v.

**BOMBARDIER, INC. and Bombardier Motor Corporation of America, Defendants–Appellees.**

**No. 03–1045.**

United States Court of Appeals, Federal Circuit.

DECIDED: July 29, 2003.

Rehearing and Rehearing En Banc Denied Sept. 24, 2003.

Before MAYER, Chief Judge, GAJARSA, and LINN, Circuit Judges.

PER CURIAM.

Simmons, Inc. ("Simmons") appeals the judgment of the United States District Court for the District of Utah granting Bombardier, Inc.'s and Bombardier Motor Corporation of America's (collectively "Bombardier") motion for summary judgment of noninfringement of U.S. Patent No. 5,836,594 (the "'594 patent") and denying its motion for a preliminary injunction. *Simmons, Inc. v. Bombardier, Inc.*, No. 01–CA–48, 2002 WL 253849 (D.Utah Feb. 7, 2002) (Findings of Fact and Conclusions of Law and Order). Because the court erred in its construction of the asserted claims, and based its denial of Simmons's preliminary injunction motion on that construction, we *vacate* and *remand* for further proceedings.

Simmons, assignee of the '594 patent, initiated an infringement suit against Bombardier alleging, *inter alia,* that Bombardier's Precision ski product infringes claims 1, 2, 6, and 9–11 of the '594 patent. The '594 patent relates to a snowmobile ski with the improvement of having downward extending sides in conjunction with an upwardly curved forward portion. This facil-

itates a snowmobile's movement across snow and ice, and provides it with directional guidance. Independent claims 1 and 10 are the broadest claims and both include the limitation at issue. Both claims recite:

*Claim 1:*

A snowmobile ski, comprising:

a base extending in a longitudinal direction and having a *bottom for moving over snow,* the base also extending in a lateral direction between a first edge and a second edge thereof and having a top adapted to be connected to a snowmobile;

a first side portion extending in the longitudinal direction and extending downward from the first edge;

a second side portion extending in the longitudinal direction and extending downward from the second edge;

a first guide rod disposed on a bottom of the first side portion; and

a second guide rod disposed on a bottom of the second side portion.

'594 patent, col. 6, ll. 58–67 (emphasis added).

*Claim 10:*

A snowmobile ski, comprising:

a base extending in a longitudinal direction and having a *bottom for moving over snow,* the base also extending in a lateral direction between a first edge and a second edge thereof and having a top adapted to be connected to a snowmobile;

a first side portion extending downward from the first edge and extending in the longitudinal direction;

a second side portion extending downward from the second edge and extending in the longitudinal direction, the first and second side portions having a front and a rear and tapering downward from the base at the front and tapering upward toward the base at the rear;

a first guide rod disposed on a bottom of the first side portion; and

a second guide rod disposed on a bottom of the second side portion.

*Id.* at col. 7, ll. 1–8 (emphasis added).

The district court construed the phrase "bottom for moving over snow" to require "flat middle and rear bottom portions that would serve to funnel snow underneath the middle portion of the ski and enhance flotation." To support this construction, the court relied on a passage found in the '594 patent's "Summary of the Invention": "Flotation is enhanced by forming the base of the ski so that as it moves across snow, the snow is funneled toward the middle portion of the ski." The court further cited a passage from the "Description of the Preferred Embodiment" where the patentee describes how a snowmobile ski "having a flat middle bottom (40), as depicted in FIG. 4, and rear bottom (60), as portrayed in FIG. 5, also aids flotation on snow." In addition, the court concluded that the prosecution history of the '594 patent required that claim coverage be limited to circumstances in which the middle and rear bottom portions of the ski are flat.

In light of its claim construction and prosecution history analyses, the court held that the claims as interpreted did not read on the accused product either literally or under the doctrine of equivalents and entered summary judgment of noninfringement for Bombardier. It also denied Simmons's request for a preliminary injunction.

At the outset, we note that the parties are in contention about the claim language the district court should have construed in this dispute. Simmons asserts that it was only necessary for the court to construe

the word "bottom," while Bombardier successfully urged construction of the phrase "bottom for moving over snow." The court properly determined that the limitation in dispute was "bottom for moving over snow" because the word "bottom" in this particular instance finds context in the surrounding words. *See Hockerson–Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed.Cir.1999) (surrounding words of disputed claim language must also be considered in determining the ordinary and customary meaning of that language). However, the court erred in abandoning its quest for a common meaning for an individual word that is part of a phrase that lacks a common meaning. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1372 (Fed.Cir.2003).

Simmons argues that the court improperly narrowed the scope of claims 1 and 10 by limiting the claimed snowmobile ski to a particular shape, i.e., flat in the middle and rear portions. It contends that "bottom" as used in the limitation at issue has an ordinary and customary meaning of "the underside." *The American Heritage College Dictionary* 163 (3d ed.1993). Simmons also argues that the court erroneously imported limitations from the written description into the claims and misapplied the prosecution history as limiting the scope of the claims at issue. Bombardier defends the court's claim construction and noninfringement analysis asserting that the written description and prosecution history of the '594 patent require that the claim language be restricted to a snowmobile ski with a certain shape.

The analytical focus of claim construction must begin and remain centered on the language of the claims, for it is that language that the patentee chose to use to "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2 (2000). Claim language is given its plain, ordinary, or accustomed meaning to one of ordinary skill in the relevant art, unless the applicant has imparted a novel meaning to the language. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed.Cir.2002).

The district court erred in incorporating limitations of the preferred embodiment into the "bottom for moving over snow" claim limitation. Its consultation of the written description and prosecution history before making any effort to discern the ordinary and customary meanings attributed to the language of the claims was premature. *Tex. Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1204 (Fed.Cir. 2002). The court also erred in concluding that Simmons had implicitly defined the limitation at issue. A basic canon of claim construction is that one may not read a limitation into a claim from the written description. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed.Cir.1998). Although one may look to the written description to define a disputed term already in a claim limitation, "the resulting claim interpretation must, in the end, accord with the words chosen by the patentee to stake out the boundary of the claimed property." *Id.*

Contrary to the court's conclusion, the specification does not show that Simmons implicitly defined the claim language at issue or restricted claims 1 and 10 to the preferred embodiment. Nothing in the intrinsic evidence suggests that the middle bottom (40) or the rear bottom (60) should be limited to being flat. The flat middle and rear bottom limitation is simply not present in claims 1 or 10, thus the language of the asserted claims does not limit them to that requirement. Moreover, neither the specification nor the prosecution history includes an expression of manifest exclusion or restriction demonstrating in-

tent to limit the middle bottom (40) or the rear bottom (60) to being flat. Although the specification describes only one embodiment of the middle bottom (40) and the rear bottom (60), no "clear statements of scope" limit those details to having an underside that is flat.

The court's requirement that the "bottom for moving over snow" limitation of claims 1 and 10 be flat in the middle and rear portions impermissibly reads limitations from the specification into the claims. Because the patentee did not deviate from the accustomed meaning of the disputed language we construe the limitation "bottom," in context with its surrounding language in claims 1 and 10, to mean "the underside for moving over snow." Accordingly, we vacate the court's grant of summary judgment of noninfringement in favor of Bombardier and remand for further proceedings consistent with this opinion.

Finally, Simmons argues that the court abused its discretion in denying its motion for preliminary injunction. It contends that the court failed to provide analytical support for its denial and simply relied on its erroneous claim construction. Bombardier responds that the court made specific findings about the shape of the patented invention and the prior art in addition to construing the claims.

The grant or denial of a preliminary injunction under 35 U.S.C. § 283 is within the discretion of the district court. *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363 (Fed.Cir.2001). We will disturb such a decision only if the district court made a clear error of judgment, or based its decision on an erroneous legal conclusion or clearly erroneous factual findings. *Id.* Because the court's denial of Simmons's preliminary injunction motion was premised upon its errant claim construction, we vacate that ruling and remand the matter for a determination consistent with our claim construction.